IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES C. BALES,

    Plaintiff,

  v.

FCA US LLC, a Delaware Limited Liability Company, and DOES 1-10, inclusive,

    Defendants.

No. C 19-04798 WHA

**ORDER RE MOTION TO DISMISS AND MOTION TO STRIKE AND ORDER TO REASSIGN CASE TO MAGISTRATE JUDGE (BY CONSENT)**

**INTRODUCTION**

In this defective product action, defendant moves to dismiss under Rule 12(b)(6) and moves to strike under Rule 12(f). For the following reasons, the motion to dismiss is **DENIED** and the motion to strike is **DENIED** in part and **GRANTED** in part.

**STATEMENT**

In November 2013, plaintiff James Bales bought his 2013 RAM 1500 pickup truck from a dealer authorized by defendant Fiat Chrysler Automobiles US LLC (FCA). In May 2014, he took it to an FCA authorized repair facility to fix a warning light on the dashboard. In July 2015 and January 2016, the pickup truck's airbag light lit up, so Bales took it back to the repair facility. In August 2017, the airbag light lit up again and the pickup truck appeared to be stuck in fourth gear in "limp mode." After each visit, Bales reasonably believed that the facility had repaired the issue because the service manager or repair technician stated that his pickup truck

was operating normally and safe to drive. In February 2018, the airbag light came on yet again along with the check engine light. After bringing it to the repair facility for the fifth time, Bales allegedly learned of a defect in his pickup truck's electrical architecture for the first time (Dkt. No. 1-1 at 3, 24–25).

Bales now alleges that all FCA vehicles, including his pickup truck, are equipped with similarly structured electrical architecture. These electrical architectures include: the TIPM Electrical Architecture, the PowerNet Electrical Architecture, and the Fiat Compact Electrical Architecture. The electrical architectures use either the Totally Integrated Power Module ("TIPM") or its successor, the Body Control Module (BCM), to control functions in the vehicle. Bales' truck uses the BCM and PowerNet architecture (*id*. at 4–5).

Bales alleges that FCA knew of defective electrical architecture since at least 2007 demonstrated by: multiple TIPM-related recalls and technical service bulletins (TSB), FCA's exhaustive pre-release vehicle testing, FCA's exclusive access to post-sale data about the performance of and repairs made to its vehicles, numerous consumer complaints submitted to both FCA and National Highway Traffic Safety Administration (NHTSA), and two NHTSA investigations into TIPM-related complaints. Notwithstanding the history of module problems in its vehicles, FCA allegedly began installing the various electrical architectures using BCM in 2011 model year vehicles and continues to install these electrical architectures and modules into its vehicles (*id*. at 5–6, 26, 144–147).

Over the past decade, 30 lines of FCA vehicles have allegedly been plagued with electrical problems arising from defective electrical architectures and modules. For example, defects in TIPM-6, BCM, and PowerNet caused vehicles to "roll away without warning" resulting in a recall of over a million vehicles (2011-2017 MY Ram 4500/5500, 2009-2017 MY Ram 1500, 2010-2017 MY Ram 2500, and 2010-2017 MY Ram 3500). The complaint details more issues with FCA vehicles: BCM and PowerNet defects caused "turn signal malfunction" (recalled 2013 MY Ram trucks); BCM defect caused warning light to fail "when tire pressure was low" (recalled 2015 MY Dodge Dart vehicles); BCM defect caused "no-start or engine stalling while driving"; BCM and PowerNet defects caused "headlights and taillights to suddenly

2

shut off"; BCM defect disabled wiper system; TIPM defect caused the airbag warning lamp to "incorrectly illuminate"; TIPM defect caused "engine stall while driving" (recalled MY 2007 Jeep Wrangler and MY 2007 Dodge Nitro vehicles); and TIPM-7 defect caused vehicles' "inability to record data" (*id.* at 6–16, 31–32).

Given the severity and number of these defects, Bales claims that FCA understood that the defective electrical architecture (whether it utilized a TIPM or BCM) posed a heightened risk of problems for consumers. Bales alleges that FCA never disclosed the PowerNet defects before he bought his pickup truck, nor at any point during his ownership of the car. Bales also alleges that FCA never instructed its retail sellers or authorized service and repair facilities to disclose the PowerNet defect to drivers or potential purchasers or lessees of vehicles equipped with any of FCA's defective electrical architectures (*id.* at 26).

Bales now brings four claims for relief: breach of express warranty violation of Song-Beverly Act, breach of implied warranty violation of Song-Beverly Act, violation of the Song-Beverly Act Section 1793.2, and fraudulent inducement-concealment. FCA moves to dismiss the fourth claim regarding fraudulent inducement and moves to strike portions of the complaint. This case was filed in the Superior Court of California, County of San Francisco in July 2019 and was removed to the United States District Court of the Northern District of California in August 2019. Originally assigned to Magistrate Judge Kandis Westmore, this new action was reassigned to the undersigned on October 2, 2019. This order follows full briefing and oral argument.

**ANALYSIS**

1. **MOTION TO DISMISS.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677. "[C]onclusory allegations of law

3

and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F. 3d 1136, 1140 (9th Cir. 1996). Dismissal is only proper if there is either a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1990).

### A. Bales Sufficiently States a Claim For Fraudulent Inducement-concealment.

Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. A pleading is sufficient under Rule 9(b) if it "identifies the time, place, and nature of the alleged fraudulent activities." In cases of corporate fraud, however, the pleading standard is relaxed since the circumstances may make it difficult to attribute particular fraudulent conduct to each defendant as an individual. Rule 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

The elements of a claim for fraud based on concealment are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (2009). This order holds that Bales pleads all elements of a claim for fraud based on concealment.

Bales alleges that (1) FCA concealed that his pickup truck had a defective PowerNet, (2) FCA had duty to disclose electrical architecture and module defects to average consumers because it had exclusive or superior knowledge of the defects, (3) FCA actively concealed facts regarding the quality of PowerNet and induced Bales' false belief in the safety of his pickup

4

truck, (4) he was unaware of the PowerNet defect when he purchased his pickup truck, and (5) FCA's concealment made him suffer loss of money, property, and value to his vehicle.

Rule 9(b) allows general pleadings of knowledge and Bales alleges specific facts to plausibly show FCA's knowledge of the alleged defective PowerNet in his pickup truck and other vehicles. Bales identifies multiple consumer complaints and testing reports alleging defects with the PowerNet electrical architecture using both BCM and TIPM (Dkt. No. 1-1 at 4–24). FCA argues that Bales only asserts "vague, boilerplate conclusory language to allege fraudulent inducement-concealment" (Dkt. No. 15 at 4). This order disagrees. Bales sufficiently alleges facts supporting the inference that: FCA knew of the PowerNet defect in his pickup truck, FCA had a duty to disclose this material fact, FCA concealed or suppressed that material fact with the intent to defraud, Bales was unaware, and as a result Bales was harmed. Because FCA is on notice of the specific fraudulent conduct against which it must defend, the motion to dismiss this complaint is **DENIED**.

### B. The Economic Loss Rule Does Not Apply.

FCA argues that Bales' claim for fraudulent inducement-concealment should be dismissed because it restates a breach of warranty claim and is, therefore, barred by the economic loss rule. Generally, purely economic losses are not recoverable in tort. *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965). Put simply, "the economic loss rule prevent[s] the law of contract and the law of tort from dissolving one into the other." *Robinson Helicopter Co., v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (quotation omitted). The rule serves to "limit liability in commercial activities that negligently or inadvertently go awry." *Id*. at 911 n.7.

Our court of appeals holds that "[u]nder California law, tort damages may accompany contract claims when the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Hannibal Pictures, Inc. v. Sonja Prods. Ltd. Liab. Co*., 432 F. App'x 700, 701 (9th Cir. 2011). Furthermore, the California Supreme Court has declined to apply the economic loss rule to fraud and misrepresentation claims. *Ibid*. So too here. Because Bales is not precluded from suing

5

1  FCA for fraud in addition to breach of warranty, the motion to dismiss Bales' fraud-based claim
2  under the economic loss rule is **DENIED**.

### 2. MOTION TO STRIKE.

Under Rule 12(f), a district court may strike from the pleadings "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although "motions to strike are generally disfavored," *Oracle Corp. v. DrugLogic, Inc.*, 807 F. Supp. 2d 885, 896 (N.D. Cal. 2011) (Judge Joseph Spero), the purpose of Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F. 3d 970, 973 (9th Cir. 2010). FCA moves to strike parts of the complaint for being immaterial or impertinent.

### A. Allegations Regarding Electrical Architecture In the Pickup Truck and Other Vehicles Are Relevant and Material.

FCA seeks to strike paragraphs 14–152 and 160–173, which reference the alleged defective electrical architectures and modules in vehicles other than the pickup truck from the complaint. FCA argues these paragraphs either fail to state specific facts of fraud with particularity or the facts pled are immaterial and impertinent to the breach of warranty claims (Dkt. No. 7 at 2). This order disagrees. Those paragraphs reference defects with BCM and PowerNet, both of which are present in Bales' pickup truck. References to defective TICM are also relevant, because TICM was BCM's predecessor and both modules have similar defective symptoms. FCA contends that there is no mention of a 2013 RAM 1500 in these paragraphs. In paragraphs 37 and 106, Bales specifically refers to BCM defects in 2009–2017 MY RAM 1500 trucks (Dkt. No. 1-1 at 7, 15).

Next, FCA seeks to strike paragraphs 188–209 referencing Bales' fourth claim for relief. This order disagrees because the paragraphs in question include case specific facts and material statements for Bales' claim for fraudulent inducement-concealment. For this reason, the motion to strike paragraphs 14–152, 160–173, and 188–209 is **DENIED**.

6

### B. Allegations Regarding "Bankruptcy" Or "Bailout" Are Impertinent.

Next, FCA seeks to strike paragraphs 4–7 from the complaint on the grounds that they are immaterial, scandalous, and impertinent. Bales claims that these allegations provide the background and context for connecting the actions of FCA to the actions of its predecessor, Chrysler Group LLC. This order disagrees. Although, allegations regarding bankruptcy and bailout of FCA's predecessors are public knowledge, this order finds them immaterial to the facts alleged. Because FCA's actions speak for themselves, references to its predecessor are impertinent and the motion to strike these paragraphs is **GRANTED**.

### CONCLUSION

For the reasons stated above, the motion to dismiss is **DENIED** and the motion to strike is **DENIED IN PART** and **GRANTED IN PART**. During oral argument both parties consented to Magistrate Judge jurisdiction for all purposes. This case is **REASSIGNED** to a Magistrate Judge to be randomly selected (with the full consent of all parties).

**IT IS SO ORDERED.**

Dated: November 19, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE